IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| ROTISH V. SINGH, | Case No. 2:17-cv-01721-SB |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| H. ENRIQUEZ, *et al.*, | |
| Defendants. | |

**BECKERMAN, U.S. Magistrate Judge.**

Rotish Singh ("Singh"), an adult in custody ("AIC") of the Oregon Department of Corrections ("ODOC"), brings this 42 U.S.C. § 1983 action against several ODOC employees ("Defendants"). Singh alleges that various defendants violated his Eighth Amendment rights and breached a settlement agreement by temporarily depriving him of an extra pillow, bedding, and clothing.

Defendants now move for summary judgment on Singh's Eighth Amendment and breach of contract claims. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, and the parties have consented to the jurisdiction of a U.S. Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons explained below, the Court grants in part and denies in part Defendants' motion for summary judgment.

PAGE 1 – OPINION AND ORDER

# BACKGROUND[1]

Singh entered ODOC custody in April 1998 and currently resides at the Oregon State Correctional Institution ("OSCI"). (Decl. of Annette Houston in Supp. of Defs.' Mot. for Summ. J. ("Houston Decl.") ¶ 3, ECF No. 91; Decl. of Gerald Long in Supp. of Defs.' Mot. for Summ. J. ("Long Decl.") Attach. 1 at 1, ECF No. 93.) Singh resided at Two Rivers Correctional Institution ("TRCI") between November 2010 and August 2017. (Long Decl. Attach. 1 at 4-5.)

## I.   MEDICAL HISTORY

Singh was previously diagnosed with gastroesophageal reflux disease ("GERD") and irritable bowel syndrome ("IBS"), and ODOC's medical staff occasionally provided Singh with Bentyl and Prilosec to treat his stomach acid issues.[2] (Decl. of Christopher DiGiulio in Supp. of Defs.' Mot. for Summ. J. ("DiGiulio Decl.") ¶¶ 5-6, ECF No. 92.) According to ODOC's medical director, Christopher DiGiulio, M.D. ("Dr. DiGiulio"), Singh often did not use "the medications that had been prescribed to him," did not "mention having acid reflux . . . , just IBS," and did not request or take his medication "on a consistent basis." (*Id.* ¶¶ 1, 5-6.) Singh did, however, request and receive an extra pillow after he told his medical provider that his "GERD [was] exacerbated by [his] lack of [an] extra pillow." (Singh Decl. Ex. 1 at 2; *see also* DiGiulio Decl. ¶ 9, explaining that acid reflux symptoms can be alleviated by elevating the head when lying down or "not eating spicy foods, eating 2-3 hours before lying down, and eating smaller meals").

---

[1] Unless otherwise noted, the following facts are either undisputed or presented in the light most favorable to Singh. At times, the Court refers to some of the individual defendants only by their last name and job title because the record does not include some of the defendants' first names.

[2] An outside medical "[s]pecialist" referred to Singh's GERD as "mild." (Decl. of Rotish Singh in Supp. of Pl.'s Resp. to Defs.' Mot. for Summ. J. ("Singh Decl.") Ex. 1 at 6, ECF No. 115; Singh Decl. at 2.)

II.     **THE SETTLEMENT AGREEMENT**

On May 14, 2014, Singh and ODOC entered into a Settlement Agreement and Release of Claims (the "Settlement Agreement"), pursuant to which Singh agreed to dismiss *Singh v. Franke*, No. 2:12-cv-873-BR (D. Or. filed May 16, 2012) with prejudice. (DiGiulio Decl. ¶ 7; DiGiulio Decl. Attach. 3 at 3.) The Settlement Agreement authorized Singh to receive an extra pillow:

> Extra Pillow. The State agrees to authorize [Singh] to have an extra pillow, and that authorization will be clearly stated for the duration of [Singh's] confinement on [Singh's] AS400 screen. [Singh's] use of the extra pillow is subject to all institutional rules and regulations, and ODOC shall have the discretion to remove [Singh's] extra pillow if [Singh] abuses this authorization.

(DiGiulio Decl. Attach. 3 at 2) (bold omitted). ODOC also agreed to refer Singh's case to the Therapeutic Level of Care ("TLC") committee to assess whether Bentyl, a medication Singh previously used to treat his stomach acid issues, was "medically necessary to treat [him]." (*Id.* at 3; *see also* DiGiulio Decl. ¶ 5, reflecting that in May 2012, Singh "requested that his prescription for Bentyl be renewed for his previously diagnosed acid reflux and IBS").

On September 11, 2015, a TRCI captain ("Captain Pedro") adjusted Singh's "Corrections Information Systems Health Status," which is "an information document available to all staff notifying them of an inmate's special requirements that may affect his housing status or other factors related to his incarceration." (Decl. of Micki Jarnagin in Supp. of Defs.' Mot. for Summ. J. ("Jarnagin Decl.") ¶¶ 3-4, ECF No. 95.) Specifically, Captain Pedro noted that Singh was "authorized one extra pillow pursuant to a court order," clothing (a Velcro belt because of his "reaction to metal"), and bedding (a non-wool blanket). (Jarnagin Decl. Attach. 1 at 1.)

///

///

///

PAGE 3 – OPINION AND ORDER

### III. THE PRESENT ACTION

#### A. Claim One

On April 5, 2017, ODOC assigned Singh to the Disciplinary Segregation Unit ("DSU") because he was involved in an altercation with three other AICs. (Decl. of Melissa Nofziger in Supp. of Defs.' Mot. for Summ. J. ("Nofziger Decl.") ¶ 5, ECF No. 94.) That same day, Singh informed defendant Babcock ("Babcock"), a TRCI correctional officer, about his authorization for an extra pillow "due to [his] medical [needs] and prior settlement agreement." (Singh Decl. at 2.) Singh also told prison officials that he was deprived of his bedding and clothes. (*Id.* at 3.)

Babcock told Singh that he lacked any authorization for an extra pillow, but Babcock did not review Singh's records. (*Id.* at 2.) However, defendant Annette Houston ("Houston"), a TRCI lieutenant, states that (1) she escorted Singh to DSU and talked to Singh and defendant Enriquez ("Enriquez"), a TRCI captain, about items Singh was missing; (2) Enriquez ordered her to issue Singh an extra pillow, undergarments, and socks; (3) any delay in the arrival of Singh's blankets was "due to the number of intakes"; and (4) her best recollection is that Singh received his "extra pillow, undergarments, and socks before [she] ended [her] shift at 2:30 pm. on April 5, 2017." (Houston Decl. ¶¶ 5-8.)

On April 25, 2017, Singh filed a grievance against Babcock for failing to provide him with bedding, clothing, and an extra pillow. (Singh Decl. Ex. 5 at 1-2.) On May 15, 2017, Babcock responded to Singh's grievance and explained that Singh received a jumpsuit, sheets, and blankets:

> In your grievance you state that when you came into segregation on April 5, 2017 and were processed into segregation, you did not receive undergarments, socks, [a] towel and bedding. A hand towel is issued for in cell use. A regular size DOC towel is issued to inmates during shower times. You were admitted into DSU at approximately 12:30 PM. You were given a jumpsuit and sheets. Blankets are issued once they arrive with [the] inmate[']s inventoried property. Your blankets

PAGE 4 – OPINION AND ORDER

> were delivered to your cell at approximately 3:45 PM. I have been counseled on the issuing of socks and undergarments upon intake by [Sergeant] Houston.

(*Id.* at 3.)

On May 24, 2017, Singh filed a grievance appeal stating that Babcock and Enriquez violated Oregon Administrative Rules when they failed to provide Singh with socks, a towel, bedding, and undergarments "during intake and processing." (*Id.* at 4) (caps omitted). On June 19, 2017, TRCI's superintendent, defendant Brigitte Amsberry ("Amsberry"), denied Singh's first-level grievance appeal, noting that Babcock reported that he issued Singh a jumpsuit and sheets during intake; Babcock "received counseling on issuing socks and undergarments [during] intake"; Singh received his bedding as soon as it arrived with his inventoried property; and she apologized for any errors that occurred during intake. (*Id.* at 5.)

On July 8, 2017, Singh filed a second-level grievance appeal, wherein he claimed that Babcock failed to mention or explain the process for requesting a towel, socks, underwear, bedding, or his pillow. (*Id.* at 6.) On September 14, 2017, a grievance appeal coordinator closed Singh's grievance appeal based on his failure to comply with an ODOC rule that prevents AICs from grieving issues that are the subject of a tort claim notice.[3] (*Id.* at 7.)

### B. Claims Two, Three, and Four

#### 1. Grievance No. TRCI-2015-08-123

On August 23, 2015, about three weeks before Captain Pedro updated Singh's system profile to reflect that he was allowed to use an extra pillow, Singh filed a grievance alleging that on July 28, 2015, prison officials denied Singh access to a pair of underwear, socks, a towel, and an extra pillow when they moved him from general population to administrative segregation. (*Id.*

---

[3] The grievance related to Singh's DSU intake and processing (Grievance No. TRCI-2017-04-176) forms the basis of Singh's first claim for cruel and unusual punishment. (Singh Decl. at 2-5.)

at 8.) A TRCI captain ("Captain Iverson") responded to Singh's grievance on September 14, 2015, noting that he told Singh "at the time of [his] intake to segregation [that his] laundry had not yet arrived"; prison officials had "taken action to ensure that everyone admitted to segregation received the allotted issue at the time of intake"; and he was not able to locate anything in "the computer indicating [that Singh could] receive an extra pillow."[4] (Id. at 10.)

### 2. Grievance No. TRCI-2017-04-073

On April 9, 2017, Singh filed a grievance against Enriquez for failing adequately to supervise his subordinates during Singh's DSU intake and processing on April 5, 2017. (Singh Decl. at 6-7.) Specifically, Singh complained that Enriquez and his subordinates denied Singh access to his blankets, undergarments, socks, a towel, and bedding. (Singh Decl. Ex. 5 at 11.) Singh, however, acknowledged that his blankets arrived later that same day. (Id.)

Houston responded to Singh's grievance on May 8, 2017. Houston noted that ODOC issued Singh a hand towel and an intake box that contained "sheets, [a] pillow case, 3 books, 1 cup, 1 spoon, 2 [inmate communication forms], 2 white sheets of paper, 1 toothbrush, and 1 hair comb"; ODOC provides larger towels when AICs are showering; ODOC had to process approximately twenty-five inmates on April 5, 2017, which is why Singh's blankets were delayed and did not arrive until "approximately 3:45 pm"; and unnamed staff members told Houston that they explained the process to Singh for obtaining undergarments and socks. (Id. at 13.)

On May 13, 2017, Singh filed a grievance appeal, wherein he maintained that Houston's response was inaccurate, and that Houston and Enriquez violated an Oregon Administrative Rule when they denied him access to socks, undergarments, a towel, and bedding. (Id. at 14-15.)

---

[4] Singh did not appeal Captain Iverson's response. (See Singh Decl. at 6-8.)

PAGE 6 – OPINION AND ORDER

Amsberry responded to Singh's grievance appeal on June 1, 2017. (*Id.* at 16.) Amsberry "[t]hank[ed]" Singh for "bringing this to our attention" and explained that "Enriquez ha[d] corrected this issue and [it] should not happen in the future." (*Id.*)

On June 22, 2017, Singh filed a second-level grievance appeal, complaining about ODOC's repeated failure to follow Oregon Administrative Rules regarding DSU intake and processing, and stating that he planned to sue if ODOC did not fix the issue. (*Id.* at 17.) An administrator, defendant Mark Nooth ("Nooth"), denied Singh's appeal on July 31, 2017, noting that Amsberry adequately responded to Singh's concerns. (*Id.* at 18.) Nooth also carbon copied TRCI's acting superintendent, defendant Jackson ("Jackson").[5] (*Id.*)

### C. Singh's Remaining Claims

#### 1. Claim Five

In his fifth claim, Singh alleges breach of the Settlement Agreement. Specifically, Singh maintains that Enriquez, Houston, Amsberry, Nooth, Babcock, and Jackson breached the Settlement Agreement by failing to provide Singh with his extra pillow. Singh claims that as a result of the breach, he suffered acid reflux symptoms while in the DSU.[6]

#### 2. Claim Six

On January 23, 2019, Singh filed a grievance against an ODOC superintendent, defendant Laney ("Laney"), because officials confiscated his extra pillow during a sweep of his housing unit. (*Id.* at 19-20.) Defendant Hyde ("Hyde"), a TRCI captain, responded to Singh's

---

[5] Grievance Nos. TRCI-2015-08-123 and TRCI-2017-04-073 form the bases for Singh's second, third, and fourth claims, which he refers to as cruel and unusual punishment claims. (Singh Decl. at 6-8.)

[6] Singh's declaration does not address Claim Five, but he did discuss this claim in his response brief. (*See* Mem. in Supp. of Pl.'s Resp. to Defs.' Mot. Summ. J. ("Pl.'s Resp.") at 12, ECF No. 114.)

PAGE 7 – OPINION AND ORDER

grievance on January 31, 2019, stating that officials took Singh's second pillow because they did not "see anything around [his] bunk that authorized [him] to have a second pillow" or have access to the computer system to check for an authorization. (*Id.* at 21.) Hyde also stated that he placed an extra pillow on Singh's bunk earlier that week and provided Singh with an authorization to attach it to his bunk going forward. (*Id.*) Hyde's supervisor, defendant Long ("Long"), also signed Hyde's response. (*Id.*)

On February 11, 2019, Singh filed a first-level grievance appeal, wherein he objected to posting any personal information on or near his bunk area. (*Id.* at 24-25.) Laney denied Singh's first-level grievance appeal on February 14, 2019, noting that "OSCI management posted notices to inmates assigned to [Singh's housing unit] that a clothing sweep was going to take place and . . . any additional clothing or bedding outside of authorized amounts would be confiscated"; Singh "could have informed unit staff that [he was] authorized an extra pillow"; and during large housing unit sweeps, security staff does "not have immediate access to the computer system that verifies [his] authorization to have the extra item." (*Id.* at 26.)

On March 11, 2019, an ODOC administrator, defendant Rob Persson ("Persson"), denied Singh's second-level grievance appeal, noting that he concurred with Laney's response and felt that Laney responded appropriately to Singh's concerns about his extra pillow.[7] (*Id.* at 28.)

### 3.     **Claim Seven**

On July 19, 2019, ODOC ordered Singh to provide a urine sample. (Nofziger Decl. ¶ 6.) Singh's test results showed that he tested positive for methamphetamine and marijuana. (*Id.*) Singh therefore returned to the DSU on July 27, 2019. (*Id.*)

---

[7] Grievance No. OSCI-2019-01-049 forms the basis of Singh's sixth claim for breach of the settlement agreement. (Singh Decl. at 8-10.)

PAGE 8 – OPINION AND ORDER

Also on July 27, 2019, Singh filed a grievance because officials denied him access to his extra pillow in the DSU. (Singh Decl. Ex. 5 at 29-30.) A lieutenant responded on August 6, 2019, noting that the issue was resolved because Singh received his extra pillow on July 31, 2019. (*Id.* at 31.) ODOC released Singh from the DSU on August 15, 2019. (Long Decl. ¶ 5.)

On August 26, 2019, Laney denied Singh's first-level grievance appeal and noted that (1) Singh received his extra pillow as soon as officials confirmed that he had the necessary authorization, (2) officials delivered Singh's pillow before they received his grievance, and (3) Singh failed to inform DSU's unit staff about his authorization for an extra pillow. (Singh Decl. Ex. 5 at 33.)

On September 10, 2019, Persson denied Singh's second-level grievance, noting that he agreed with Laney's response and Laney responded appropriately to Singh's concerns.[8] (*Id.* at 35.)

## DISCUSSION

### I.     STANDARD OF REVIEW

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). At the summary judgment stage, the court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in favor of that party. *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 891 (9th Cir. 2005). The court does not assess the credibility of witnesses, weigh evidence, or determine the truth of matters in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio*

---

[8] Grievance No. OSCI-2019-08-002 forms the basis of Singh's seventh and final claim for breach of the settlement agreement. (Singh Decl. at 10-13.)

*Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

## II. ANALYSIS

Defendants move for summary judgment on all of Singh's remaining claims in this case. As explained below, the Court concludes that on the record currently before the Court, no reasonable juror could find that any of the named defendants knew of and disregarded an excessive risk to Singh's health and safety. However, the Court concludes that Singh has produced sufficient evidence to create a jury question as to whether Defendants materially breached the terms of his Settlement Agreement. Accordingly, the Court grants in part and denies in part Defendants' motion for summary judgment.

### A. Singh's Eighth Amendment Claims

#### 1. Applicable Law

To prevail on his Eighth Amendment claims, Singh must demonstrate that Defendants were deliberately indifferent to his serious medical needs or conditions of confinement. *See Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (serious medical needs); *Grenning v. Miler-Stout*, 739 F.3d 1235, 1238 (9th Cir. 2014) (conditions of confinement). To satisfy the subjective component of the Ninth Circuit's deliberate indifference test, Singh must demonstrate that Defendants knew of and disregarded an excessive risk to Singh's health and safety. *See Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004)); *Grenning*, 739 F.3d at 1239 (citing *Johnson v. Lewis*, 217 F.3d 726, 734 (9th Cir. 2000)).

///

///

///

### 2. Analysis

On this record, no reasonable juror could conclude that Defendants knew of and disregarded an excessive risk to Singh's health and safety. The Court therefore grants Defendants' motion for summary judgment on Singh's Eighth Amendment claims.

As to Claim One, the record reflects that ODOC assigned Singh to the DSU on April 5, 2017 and Singh complained that he did not receive a towel, socks, undergarments, certain bedding, or an extra pillow during intake and processing. The parties appear to dispute how long Singh stayed in the DSU (*see* Defs.' Reply in Supp. of Defs.' Mot. for Summ. J. ("Defs.' Reply") at 4, ECF No. 123), and whether Singh ever received his extra pillow, undergarments, and socks on April 5, 2017. (*See* Houston Decl. ¶¶ 5-8.) The parties, however, do not appear to dispute that Singh received a jumpsuit, a hand towel, and sheets, had access to a large towel for showering, and received his blankets and inventoried property on April 5, 2017, after officials processed a large number of intakes. Furthermore, nothing in the record contradicts the testimony of ODOC's medical director, Dr. DiGiulio, who states that Singh often did not use his medication or mention suffering from acid reflux, short periods of uncomfortable acid reflux will not cause lasting harm, and there were other means by which Singh could have alleviated his acid reflux symptoms, such as "not eating spicy foods, eating 2-3 hours before lying down, and eating smaller meals." (DiGiulio Decl. ¶¶ 5, 9.) Given these facts, the Court concludes that no reasonable juror could find that Defendants knew of and disregarded an excessive risk to Singh's health and safety in connection with his April 2017 DSU stay.

Singh's remaining Eighth Amendment claims (i.e., Claims Two, Three, and Four) are based on (1) Defendants' failure to provide Singh with a pair of underwear, socks, a towel, and his extra pillow when Defendants moved Singh from general population to administrative segregation on July 28, 2015, and (2) Enriquez's failure to prevent his subordinates from denying

PAGE 11 – OPINION AND ORDER

Singh access to his blankets, undergarments, socks, a towel, and certain bedding on April 5, 2017.

Although Singh was deprived of his extra pillow for short periods of time, the record suggests that Singh received sheets, a jumpsuit, and a hand towel during intake and processing. The record also suggests that there were only temporary and justifiable delays in the arrival of Singh's blankets and inventoried property. Additionally, Dr. DiGiulio testified that Singh often did not use his medication or mention suffering from acid reflux, short periods of uncomfortable acid reflux will not cause lasting harm, and there were other means by which Singh could have alleviated his acid reflux symptoms, as discussed above. (DiGiulio Decl. ¶¶ 5, 9.) An outside medical specialist also referred to Singh's GERD as "mild." (Singh Decl. Ex. 1 at 6.) On these facts, no reasonable juror could find that Defendants knew of and disregarded an excessive risk to Singh's health and safety.

For these reasons, Defendants are entitled to summary judgment on Singh's Eighth Amendment claims.

      **B.**     **Singh's Breach of Contract Claims**

Singh brings three claims against Defendants for breach of the Settlement Agreement. These breach of contract claims are premised on Singh's assertion that Defendants breached the Settlement Agreement when they moved him to the DSU and temporarily deprived him of his extra pillow.

          **1.**     **Applicable Law**

To prevail on a breach of contract claim under Oregon law, a plaintiff must establish four elements: "'[T]he existence of a contract, its relevant terms, plaintiff's full performance and lack

of breach and defendant's breach resulting in damage to plaintiff.'"[10] *Sleash, LLC v. One Pet Planet, LLC*, No. 3:14-cv-00863-SI, 2014 WL 4059163, at *4 (D. Or. Aug. 15, 2014) (quoting *Slover v. Or. State Bd. of Clinical Soc. Workers*, 927 P.2d 1098, 1101 (Or. Ct. App. 1996)). "[W]hen there has been a material breach of a contract, the injured party may rescind the contract and sue for restitution or damages, or, in certain cases, may seek specific performance." *Tarabochia v. Clatsop Cnty. Or.*, 646 F. App'x 535, 538 (9th Cir. 2016) (citing *Mohr v. Lear*, 395 P.2d 117, 120 (Or. 1964)).

"'A breach is material if it goes to the substance of the contract and defeats the object of the parties' entering into the contract.'" *Sleash*, 2014 WL 4059163, at *4 (quoting *Commerce Mortg. Co. v. Indus. Park Co.*, 791 P.2d 132, 136 (Or. Ct. App. 1990)). Typically, "[w]hether a breach is material is . . . a question of fact for the jury." *Id.* (citing *Wasserburger v. Am. Sci. Chem., Inc.*, 514 P.2d 1097, 1099 (Or. 1973)). In addressing whether a breach is material, courts consider these factors: "(1) the extent to which the injured party will obtain a substantial benefit which he reasonably could have anticipated; (2) the extent to which the injured party may be adequately compensated in damages for the lack of complete performance, and (3) the willful, negligent or innocent behavior of the party failing to perform." *Id.* (quoting *Commerce*, 791 P.2d at 136).

///

///

---

[10] The Settlement Agreement does not include a choice-of-law provision. The Court applies Oregon law because the parties entered into the Settlement Agreement in Oregon and its subject matter relates to conduct in Oregon prisons. *See Kelly v. Wengler*, 822 F.3d 1085, 1095 (9th Cir. 2016) (addressing an action brought under 42 U.S.C. § 1983 and applying the forum state's contract law because the parties entered into the stipulation, which incorporated their settlement agreement, in the forum state, the plaintiffs were residents of the forum state, and the stipulation related to business conducted in the forum state's prisons).

PAGE 13 – OPINION AND ORDER

**2.     Analysis**

According to Defendants, the Court must assess whether it was "a *material* breach of the referenced Settlement Agreement each time [Singh] and his pillow became separated." (Defs.' Mot. at 17.) Defendants also suggest that Singh is not entitled to a remedy for any alleged breach because he engaged in fights and used drugs while in custody and thus is "partly responsible" for being separated from his extra pillow. (*Id.*) The Court finds that Singh has submitted sufficient evidence to raise a jury question as to whether Defendants materially breached the terms of the Settlement Agreement. *Cf. Choi v. Reed Inst.*, 822 F. App'x 572, 575 (9th Cir. 2020) (affirming grant of summary judgment because the plaintiff failed to adduce sufficient evidence that the defendant materially breached the contract).

With respect to Defendants' argument that any breaches of the Settlement Agreement were not material, Singh has presented sufficient evidence that Defendants' failure to provide the extra pillow in a timely manner defeated the object of the Settlement Agreement. *See Sleash*, 2014 WL 4059163, at *4 ("'A breach is material if it goes to the substance of the contract and defeats the object of the parties' entering into the contract.'") (citation omitted). Specifically, the record suggests that Singh repeatedly notified prison officials about the pillow authorization, but prison officials were not aware of the authorization because ODOC did not update Singh's Corrections Information Systems Health Status until September 11, 2015, nearly a year and a half after ODOC and Singh executed the Settlement Agreement. Although a brief separation from a second pillow may appear immaterial, the extra pillow was one of the primary objects of the Settlement Agreement, and therefore a reasonable juror could conclude that the alleged breaches of the Settlement Agreement were material. *See id.* ("Whether a breach is material is ordinarily a question of fact for the jury.") (citation omitted).

///

With respect to Defendants' argument that Singh's own conduct resulted in his brief separations from the extra pillow, the Settlement Agreement authorized Singh to receive the extra pillow unless he "abused" the authorization or used the pillow in a manner that violated an institutional rule or regulation. (DiGiulio Decl. Attach. 3 at 2.) Even if Singh was separated from his second pillow as the result of his own misconduct, Defendants have not presented any evidence that Singh abused the extra pillow authorization or used the extra pillow in a manner that violated prison rules or regulations. Thus, Defendants have not presented any basis for depriving Singh of the benefit of his bargain.

For these reasons, the Court denies Defendants' motion for summary judgment on Singh's claims for breach of the settlement agreement (i.e., Claims Five, Six, and Seven).

## CONCLUSION

Based on the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Defendants' motion for summary judgment (ECF No. 90).

**IT IS SO ORDERED.**

DATED this 3rd day of February, 2021.

*Stacie F. Beckerman*

HON. STACIE F. BECKERMAN
United States Magistrate Judge